UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: ROBERT PACHECO and
MARIA PACHECO,

      Debtors.

No. 19-10733-j7

MICHAEL ALARID, JR.,

      Cross-Plaintiff,

      v.

ROBERT PACHECO,

      Cross-Defendant.

Adversary No. 19-1066-j

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff, Michael Alarid, Jr.'s Objection to Notice of Removal and Motion to Remand ("Motion to Remand"). The Court heard oral argument on the Motion to Remand and took the matter under advisement. The removed cross-claim asserts a state law claim to establish the debt Mr. Alarid seeks to except from the discharge in a separate pending nondischargeability proceeding.[1] Prepetition, the State Court entered summary judgment against Mr. Pacheco on Mr. Alarid's cross-claim, and Mr. Pacheco filed a motion to reconsider the summary judgment, which remains pending. Mr. Pacheco has been granted a bankruptcy discharge. At issue is whether this Court should remand the removed cross-claim so the State Court can rule on the pending motion to reconsider the summary judgment and otherwise adjudicate the claim on the debt at issue in the nondischargeability action.

---

[1] *See* Adversary No. 19-1054-j.

The Court will remand this adversary proceeding and modify the discharge injunction for the limited purpose of allowing the State Court to rule on the pending motion to reconsider its prior summary judgment. This Court otherwise will adjudicate the claim on the debt in the nondischargeability action, if and to the extent the State Court's ruling does not have preclusive effect.

BACKGROUND AND PROCEDURAL HISTORY[2]

Defendant Robert Pacheco filed a voluntary petition under chapter 7 of the Bankruptcy Code on March 29, 2019. The chapter 7 trustee conducted a meeting of creditors under 11 U.S.C. § 341(a) on April 26, 2019. *See* Bankruptcy Case No. 18-12192-j7 – Docket Nos. 1 and 7. On May 3, 2019, the Chapter 7 Trustee reported that she held and concluded the meeting of creditors. *Id.* – Docket No. 14. The Court entered an Order of Discharge granting Mr. Pacheco a chapter 7 discharge on August 14, 2019. *See* Case No. 19-10733-j7 – Docket No. 29. The chapter 7 bankruptcy case was closed on the same date.

Before Mr. Pacheco filed for bankruptcy protection, he and Michael Alarid, Jr. had been involved in two different state court lawsuits: 1) *Michael Alarid Jr. v. Robert Pacheco*, Case No. D-412-CV-2013-00127; and 2) *Ditech Financial, LLC v. Dianne M. Pacheco et al,* Case No. D-412-CV-2015-0029 (the "State Court Foreclosure Action"). Both actions concerned Mr. Pacheco's sale of certain real property to Mr. Alarid under a real estate contract. Mr. Alarid asserted a cross claim against Mr. Pacheco in the State Court Foreclosure Action (the "Cross-Claim"). The record before this Court does not show that any discovery has been taken with respect to the Cross-Claim.

---

[2] The facts in the Background and Procedural History section of this Memorandum Opinion are based on the documents filed of record in Mr. Pacheco's bankruptcy case, Case No. 19-10733-j7; Adversary Proceeding No. 19-1054; and this Adversary Proceeding, Adversary Proceeding No. 19-1066j.

-2-

In the State Court Foreclosure Action, the State Court entered summary judgment on the Cross-Claim (the "Summary Judgment") after Mr. Pacheco failed to file a response to Mr. Alarid's summary judgment motion. On December 17, 2018, Mr. Pacheco filed a motion to reconsider asking the State Court to vacate the Summary Judgment on the ground that the summary judgment motion was not properly supported by admissible evidence as required. *See* Motion by Defendant Robert Pacheco to Reconsider and Vacate Judgment on Cross Plaintiff's Motion for Summary Judgment on Cross Claim ("Motion to Reconsider") – Docket No. 3-7. The Motion to Reconsider has been fully briefed in the State Court Foreclosure Action. *See* Docket Nos. 3-8, 3-10, and 3-12.

On June 24, 2019, Mr. Alarid filed a Complaint for Determination Excepting Debt Evidenced by State Court Judgment from Discharge against Robert Pacheco, initiating adversary proceeding No. 19-1054 (the "Nondischargeability Action"). Mr. Alarid seeks to except from the discharge the debt established by the Summary Judgment pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). In the Nondischargeability Action he alleges many of the same factual allegations underlying the Cross-Claim.

On September 3, 2019, Mr. Pacheco removed the Cross-Claim asserted in the State Court Foreclosure Action to this Court, initiating this adversary proceeding. *See* Docket No. 1. The Motion to Reconsider remained pending at the time of removal. Mr. Alarid filed the Motion to Remand on October 23, 2019. *See* Docket No. 15.

# DISCUSSSION

A. **Removal of the Cross-Claim in the State Court Foreclosure Action**[3]

Mr. Pacheco's removal of the Cross-Claim was proper. A litigant may remove one, but not all, claims asserted in a state court action. *See* 28 U.S.C. § 1452(a) ("A party may remove any *claim* or cause of action . . ."); Fed. R. Bankr. P. 9027(a)(1) (procedure for removal of a "*claim* or cause of action") (emphasis added); S. Elizabeth Gibson, *Removal of Claims Related to Bankruptcy Cases: What Is A "Claim or Cause of Action"?*, 34 UCLA L.Rev. 1, 29 (1986) ("Thus the very language of the bankruptcy removal provision reveals an unmistakable congressional intent to enact a removal right that might extend to less than an entire lawsuit.").

Alarid asserts that removal of the was cross claim was untimely. Removal of a claim asserted in a state court action commenced before the filing of a bankruptcy case is timely if it is filed

> within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

Removal of the Cross-Claim filed in the State Court Foreclosure Action was timely under Fed. R. Bankr. P. 9027(a)(2)(B). The automatic stay applied to the State Court Foreclosure Action upon the commencement of Mr. Pacheco's chapter 7 case on March 29, 2019 and remained in effect until the automatic stay terminated upon the entry of the discharge on August 14, 2019. *See* 11 U.S.C. § 362(a) (the filing of a petition operates as a stay of "the . . . continuation . . . of a judicial . . . proceeding against the

---

[3] At oral argument, the Trustee conceded that he no longer asserts that there are procedural defects to removal.

debtor that was . . . commenced before the commencement of the case under this title . . .

."); 11 U.S.C. § 362(c) (the stay of an action against the debtor terminates when the case

is closed, dismissed, or the chapter 7 discharge is granted). The notice of removal, filed

September 3, 2019, was timely filed within 30 days after the termination of the automatic

stay upon entry of the order of discharge.

      B.      **The Timeliness of the Motion to Remand**

Mr. Pacheco asserts that the Motion to Remand was untimely because it seeks abstention. Abstention is governed by 28 U.S.C. § 1334(c).[4] Under NM LBR 5011-2, a party requesting mandatory or permissive abstention must file a motion to abstain "within 30 days after the conclusion of the meeting of creditors." NM LBR 5011-2. The Motion to Remand was filed in October of 2019, well after the 30-day deadline for seeking abstention under the local rule. It is, therefore, untimely under the local rule applicable to abstention.

However, although the Motion to Remand asserts that permissive abstention factors weigh in favor of abstention and asks the Court to permissively abstain, the title, opening paragraph, and prayer for relief of the Motion to Remand all request remand. Because Mr. Alarid

---

[4] Subsection (1) of 28 U.S.C. § 1334(c) provides for permissive abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law," and applies to both core and non-core proceedings. 28 U.S.C. § 1334(c)(1); *In re Telluride Income Growth, L.P.,* 364 B.R. 390, 398 (10th Cir. BAP 2007) ("Section 1334(c)(1) permits abstention from core matters and non-core matters . . . ."); *Beneficial Nat'l Bank USA v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.),* 220 B.R. 932, 952 (Bankr. E.D. Tenn.1998)("[P]ermissive abstention applies to both non-core related and core proceedings.") (*citing Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir.1996) (remaining citations omitted)). Mandatory abstention under 28 U.S.C. § 1334(c)(2) applies only to proceedings within the bankruptcy court's non-core "related-to" jurisdiction. *See TMBC, LLC v. McGuire (In re McGuire)*, No. 13-21054, 2014 WL 322045, at *4 (Bankr. D. Kan. Jan. 28, 2014) ("Mandatory abstention applies only to 'a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11.'") (quoting 28 U.S.C. § 1334(c)(2)); *In re George Love Farming, LLC*, 438 B.R. 354, *8 n. 42 (10th Cir. BAP 2010), *aff'd sub nom. In re George Love Farming, LC*, 420 F. App'x 788 (10th Cir. 2011) ("Mandatory abstention applies only to non-core 'related-to' proceedings") (citing *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995)).

has filed a motion to remand and seeks remand, the Court will not apply the time limit for a motion to abstain under the local rule, even though the considerations for equitable remand and permissive abstention are virtually identical.

The bankruptcy remand statute does not fix a time limit for filing a motion seeking equitable remand. *See* 28 U.S.C. § 1452(b). *See Topfer v. Topfer (In re Topfer)*, 587 B.R. 622, 628 (Bankr. M.D. Pa. 2018) ("[N]o specific deadline for filing a motion to remand is included in 28 U.S.C. § 1452(a) . . . ."). Nor does Bankruptcy Rule 9027 applicable to removal impose a time limit for seeking remand. *Id.* The general non-bankruptcy federal remand statute, 28 U.S.C. § 1447(c), imposes a 30-day time limit after the filing of a notice of removal under 28 U.S.C. § 1446(a) to file a motion to remand "on the basis of any defect other than lack of subject matter jurisdiction." 28 U.S.C. § 1447(c). However, the 30-day time limit in 28 U.S.C. § 1447(c) does not apply to motions seeking equitable remand under 28 U.S.C. § 1452(b).[5] Even so, the court may consider the timing of such a motion to remand as a factor when determining whether to remand under 28 U.S.C. § 1452(a). *See Topfer*, 587 B.R. at 628 ("[T]he timing of the motion to remand can be counted as an equitable factor in considering remand.") (citation omitted).

Mr. Alarid filed the Motion for Remand within 50 days of the notice of removal. At oral argument, Mr. Alarid no longer asserted that procedural defects in the removal of the Cross-Claim required remand and instead premised his entire argument on equitable remand. Under these circumstances, the Court finds and concludes that the Motion for Remand was timely filed.

---

[5] *See Unico Holdings, Inc. v. Nutramax Products, Inc.,* 264 B.R. 779, 786 (Bankr. S.D. Fla. 2001) ("[T]he thirty (30) day deadline in § 1447(c) does not preempt § 1452(b), 'which permits remand on 'any equitable ground' without mentioning a time limit.'") (quoting *Billington v. Winograde (In re Hotel Mt. Lassen, Inc.)*, 207 B.R. 935, 939 (Bankr. E.D. Ca. 1997)); *cf. Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1503 (8th Cir. 1992) (concluding that the 30-day limit in 28 U.S.C. § 1447(c) does not apply to a motion to remand based on abstention).

C. **Remand under 28 U.S.C. § 1452(b)**

Remand of matters related to bankruptcy cases is governed by 28 U.S.C. § 1452(b), which provides, in relevant part:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

28 U.S.C. § 1452(b).

The Motion to Reconsider, which has been fully briefed to the State Court, asks the State Court to review and overturn its decision to grant summary judgment on the merits. The practical effect of this Court denying the Motion to Remand would be for it to engage in what would be tantamount to appellate review on the merits of the State Court's decision to grant summary judgment. There is a strong public policy grounded in the interest of comity between federal and state courts and the notion of federalism, that federal courts should not unnecessarily interfere with state court proceedings. That comity doctrine is embodied not only in the bankruptcy permissive abstention doctrine,[6] but also in other doctrines such as Rooker-Feldman[7] and Younger abstention.[8] Under the Rooker-Feldman doctrine, a lower federal court may not effectively act as an appellate court to review a state court decision. *Merrill Lynch Bus. Fin.*

---

[6] *See* 11 U.S.C. § 1334(c)(1) (A bankruptcy court may abstain from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . .").

[7] Under the Rooker-Feldman doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463, 126 S. Ct. 1198, 1201, 163 L. Ed. 2d 1059 (2006). The Rooker-Feldman doctrine is grounded in the principles of federalism and comity. *See, e.g., Bianchi v. Rylaarsdam*, 334 F.3d 895, 902 (9th Cir. 2003); *Gilbert v. Ferry*, 401 F.3d 411, 418 (6th Cir. 2005), *on reh'g in part*, 413 F.3d 578 (6th Cir. 2005).

[8] The Younger abstention doctrine is based on comity and a "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982); *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir.2003) ("[F]ederal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings."). *See also Yellowbear v. Wyoming Attorney Gen.*, 525 F.3d 921, 923 (10th Cir. 2008) (acknowledging that comity considerations are the basis of Younger abstention).

*Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004).[9] The comity doctrine reflects a proper respect for the States and their institutions. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421, 130 S. Ct. 2323, 2330, 176 L.Ed.2d 1131 (2010) (citation omitted).

The Rooker-Feldman doctrine does not prohibit this Court from conducting a merits review of the State Court's decision to grant summary judgment by deciding the Motion to Reconsider after removal of the Cross-Claim to federal court. *See Jenkins v. MTGLQ Investors*, 218 Fed. App'x 719, 714 (10th Cir. 2007) ("[T]he *Rooker-Feldman* doctrine has no application to a properly removed case where . . . there is no attack on a separate and final state-court judgment[;]" consequently, a federal court could set aside a state court default judgment following removal.).[10] Nevertheless, the same principles of federalism and comity that inform the Rooker-Feldman doctrine suggest this Court should not decide the Motion to Reconsider absent strong reasons to the contrary.[11]

In determining whether this Court should grant the Motion for Remand under 28 U.S.C. § 1452(b), apart from the question of whether this Court should decide the Motion to Reconsider, the Court considers the same factors used to determine whether permissive abstention is appropriate under 28 U.S.C. § 1334(c)(1).[12] Factors relevant to permissive abstention include:

---

[9] *Accord In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018); *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003).

[10] *See also Sawyer v. USAA Ins. Co.,* 839 F.Supp.2d 1189, 1215 (D.N.M. 2012) ("[W]hen a case is removed from state court, the federal court takes the case in its current posture and treats previously entered orders as its own.") (citing *Granny Goose Foods v. Brotherhood of Teamsters, Local No. 70*, 415 U.S. 423, 436-37 (1974)).

[11] *Cf. Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) ("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.") (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

[12] *See In re Gregory Rockhouse Ranch, LLC*, 339 B.R. 249, 252 (Bankr. D.N.M. 2006) ("In determining whether it is appropriate to remand a removed proceeding, it is proper for the Court to consider the standards applicable to abstention.") (citation omitted); *Oakwood Acceptance Corp. v. Tsinigini (In re Oakwood Acceptance Corp.)*, 308 B.R. 81, 87 (Bankr. D.N.M. 2004) ("The standards used to determine whether equitable remand is warranted under § 1452(b) are virtually identical to those used to determine whether discretionary abstention is merited under § 1334(c)(1).") (citations omitted). Moreover, a court

> (1) the effect that abstention would have on the efficient administration of bankruptcy estate;
> (2) the extent to which state law issues predominate;
> (3) the difficulty or unsettled nature of applicable state law;
> (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
> (5) the federal jurisdictional basis of the proceeding;
> (6) the degree of relatedness of the proceeding to the main bankruptcy case;
> (7) the substance of asserted "core" proceeding;
> (8) the feasibility of severing the state law claims;
> (9) the burden the proceeding places on the bankruptcy court's docket;
> (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties;
> (11) the existence of a right to jury trial; and
> (12) the presence of nondebtor parties in the proceeding.[13]
> (13) the "status of the proceeding in state court prior to . . . remov[al];" and
> (14) the "status of the proceeding in the bankruptcy court."[14]

Several of these considerations support remand, in addition to principles of comity that support remand so the State Court may decide the Motion to Reconsider. Remand will not interfere with administration of the bankruptcy estate or have any impact on other creditors. Mr. Pacheco has been granted a discharge and his bankruptcy case has been closed. Further, the Cross-Claim raises only state law issues and those issues relate to an alleged breach of the parties' settlement agreement in a prior state court action. The state court judge has presided over the litigation between these parties for many years and is familiar with what has transpired. Finally, removal by Mr. Pacheco may well have been a forum shopping tactic to get a new judge following the State Court's entry of summary judgment against him.

---

may raise permissive abstention *sua sponte*. *See The Scoular Co. v. Dalhart Consumers Fuel Ass'n, Inc. (In re Podzemny)*, No. 11-09-14226 JL, 2010 WL 1795269, at *6 (Bankr. D.N.M. May 3, 2010); *Bricker v. Martin*, 348 B.R. 328, 333 (W.D. Pa. 2006), *aff'd*, 265 F. App'x 141 (3d Cir. 2008) (noting that, unlike the mandatory abstention statute, the permissive abstention statute does not require a motion, which "by implication [means that] a bankruptcy court may permissively abstain *sua sponte*.") (citations omitted).

[13] *Commercial Fin. Servs., Inc. v. Bartmann (In re Commercial Fin. Servs., Inc.)*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000).

[14] *Personette v. Midgard Corp.(In re Midgard Corp.)*, 204 B.R. at 778-79 (10th Cir. BAP 1997).

On the other hand, there are good reasons for this Court to hear this removed proceeding. Except for entry of summary judgment, the State Court has made no rulings relating to the Cross-Claim. The State Court has not heard any evidence on the Cross-Claim. The facts found in the summary judgment obtained by default were not "actually litigated" and, therefore, have no preclusive effect in this Court. *See Murphy v. Spencer (In re Spencer)*, 541 B.R. 750, 756 (Bankr. D.N.M. 2015) (issue preclusion under New Mexico law requires that "the issue was actually litigated in the prior adjudication . . . . Default judgments cannot form the basis for issue preclusion.") (citations omitted). Remand may subject the parties to needless duplicative litigation and risk inconsistent results. The evidence relevant to Mr. Alarid's Cross-Claim and his nondischargeablity claims are essentially the same. If, upon remand, the State Court reconsiders and vacates the Summary Judgment, the parties will be litigating in State Court at the same time they litigate the non-dischargeability claims in this Court. And if the Non-Dischargeability Action proceeds at the same time as the Cross-Claim in state court the parties will duplicate their efforts.

It makes no sense to remand and require the parties to litigate the same facts twice in two forums and create a race in which issue preclusion is applied to the facts found by the tribunal that enters a final judgment first. To avoid this possibility, Mr. Alarid argues that this Court should remand this proceeding and stay the Nondischargeability Action pending entry of a final judgment in the State Court Action. There are several problems with this approach. First, the specific findings necessary to except a debt from the discharge under 11 U.S.C. §§ 523(a)(2)(A) and/or (a)(6) will not necessarily be found in a state court adjudication of Mr. Alarid's Cross-Claim, thereby creating the possibly of two trials with duplicative evidence.[15] Second, this Court

---

[15] Issue preclusion can establish non-dischargeability only if the factual findings satisfy the non-dischargeability standards of 11 U.S.C. 523(a). *See Brown v. Felsen*, 442 U.S. 127, 139 n.10, 99 S. Ct.

has exclusive jurisdiction to determine whether the debt at issue is non-dischargeable.[16] Third, by remanding this proceeding to State Court, this Court loses control over how long adjudication of the state law claims will take. The relatively short deadlines for objections to discharge and dischargeability of debts reflect a bankruptcy policy of expeditiously determining issues relating to the discharge of debt to give the deserving debtor the certainty of the fresh start free from the stress of discharge litigation.[17]

After considering the strongest reason to remand, which is to have the state court rule on the Motion to Reconsider, against the reasons to not to remand, the Court finds that the best way to proceed is to modify the discharge injunction for the sole purpose of allowing the state court to determine the pending Motion to Reconsider.

---

2205, 2213, 60 L. Ed. 2d 767 (1979) ("If, in the course of adjudicating a state-law question, a state court should determine the factual issues using standards identical to those of § 17 [of the former Bankruptcy Act, now codified in 11 U.S.C. § 523 of the Bankruptcy Code], then collateral estoppel [also known as issue preclusion], . . . would bar relitigation of those issues in the bankruptcy court."); *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988) ("[C]ollateral estoppel [issue preclusion] is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.") (citations omitted).

[16] *See Brown v. Felsen*, 442 U.S. at 135-36 (whether a debt is excepted from discharge is a matter within the exclusive jurisdiction of the bankruptcy court and could not have been raised in the state court action; consequently, claim preclusion does not extend to a subsequent non-dischargeability action). *See also Buke, LLC v. Eastburg (In re Eastburg)*, 447 B.R. 624, 633 (10th Cir. BAP 2011) (recognizing that the bankruptcy court has exclusive jurisdiction over non-dischargeability claims under 11 U.S.C. § 523(a)(2), (4) and (6)); *Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 900 (Bankr. D.N.M. 2016) (whether a debt is dischargeable is a matter within the bankruptcy court's exclusive jurisdiction).

[17] *See In re Marsh*, No. 12-60195-7, 2012 WL 4482581, at *3 (Bankr. D. Mont. Sept. 26, 2012) ("The short deadlines give debtors some degree of certainty in the process of obtaining a discharge. A Chapter 7 bankruptcy discharge entitles a debtor to a 'fresh start,' therefore, the debtor has an interest in the prompt resolution of all discharge issues.) (quoting *In re Bomarito*, 448 B.R. 242, 251 (Bankr. E.D. Cal. 2011). *Accord Yang v. Xiong (In re Ia Vang Xiong)*, No. 10-65087-B-13, 2011 WL 10723287, at *6 (Bankr. E.D. Cal. Sept. 14, 2011).

D.  **Modification of the Discharge Injunction**

   1.  *Applicability of the Discharge Injunction While the Non-Dischargeability Action is pending*

The Court granted Mr. Pacheco a discharge in August of 2019. After discharge, the automatic stay, which prevented the continued litigation of the State Court Foreclosure Action against Mr. Pacheco during the pendency of his bankruptcy case, terminated and was replaced with the discharge injunction. *See Henderson v. White (In re Henderson0*, 560 B.R. 365, 370 (Bankr. D.N.M. 2016) ("Once the debtor receives a Chapter 7 discharge, the discharge inunction, found in 11 U.S.C. § 524, takes the place of the automatic stay.") (citations omitted). The discharge injunction operates as an injunction against the commencement or continuation of any action, or any act, to collect, recover or offset any discharged debts as a personal liability of the debtor. *See* 11 U.S.C. § 524 (the bankruptcy discharge "operates as an injunction against the commencement or continuation of an action . . ., or any act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ."); *Ridley v. M & T Bank (In re Ridley)*, 572 B.R. 352, 360 (Bankr. E.D. Okla. 2017) ("Once discharge is entered, the automatic stay dissolves and the discharge injunction arises to prevent creditors from attempting to collect debts that were discharged.").

A potential problem arises when a debtor is granted a discharge while an action to except a debt from the discharge and a parallel state court action to establish the debt are both pending: does the discharge injunction apply to prevent continuation of the state court action before there has been a determination of dischargeability? Subsection (c) of 11 U.S.C. § 523 provides that "the debtor shall be discharged from a debt of a kind described in paragraph (2), (4), or (6) of subsection (a) . . . unless . . . the court determines such debt to be excepted from discharge . . . ." 11 U.S.C. § 523(c)(1). If the discharge injunction does not apply unless and until the court

determines such debt to be excepted from discharge, creditors would be free to take action to collect the debt from the debtor outside of bankruptcy court pending resolution of the non-dischargeability proceeding that relates to the debt.[18] The Tenth Circuit Bankruptcy Appellate Panel has found that 11 U.S.C. § 523(c) is best interpreted to mean that non-dischargeability claims under 11 U.S.C. § 523(a)(2), (4), and (6) are "'presumptively discharged' until the bankruptcy court makes a determination regarding dischargeability, and hence the discharge injunction applies . . . ." *Eastburg*, 447 B.R. at 632.[19]

The Court agrees that the best construction of 11 U.S.C. § 523(c)(1) is that a debt is discharged while a nondischargeabilty action relating to that debt is pending. To hold otherwise and allow nonbankruptcy litigation to proceed unimpeded or to allow the creditor to seize the debtor's assets to collect an unsecured debt while the non-dischargeability action relating to the debt is pending would lead to an absurd result that could not have been intended by the legislature.[20] If the debtor later prevailed in the non-dischargeability action, the debtor would be deprived of the benefit of the bankruptcy discharge contrary to the fresh start policy of the Bankruptcy Code.[21] It would "throw those types of debts into 'debt limbo,' with neither the

---

[18] Upon the grant of the discharge, the automatic stay protecting an individual chapter 7 debtor from acts against the debtor or debtor's property to collect prepetition debts terminates by operation of law. 11 U.S.C. § 362(c)(2).

[19] *See also In re Mauro*, No. 18-00107, 2018 WL 4786369, at *2 (Bankr. D.D.C. Oct. 2, 2018) (Section 523(c) "renders a debt dischargeable 'unless' the bankruptcy court concludes that section 523(a)(2)(A), (4), or (6) is applicable, not the reverse.") (quoting *In re Gibellino-Schultz,* 446 B.R. 733, 740 n.5 (Bankr. E.D. Pa. 2011)).

[20] *See In re McGough*, 737 F.3d 1268, 1276 (10th Cir. 2013) ("[W]here a plain language interpretation of a statute would lead to an absurd outcome which Congress clearly could not have intended, we employ the absurdity exception to avoid the absurd result."); *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (under accepted rules of statutory construction, a court may depart from the literal language of a statute when it would lead to an absurd result so contrary to legislative intent that it would have been "unthinkable" for Congress to have intended it).

[21] *See Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991) (the fresh start policy of the Bankruptcy Code gives the honest but unfortunate debtor an unencumbered new beginning).

automatic stay nor the discharge injunction functioning to protect debtors." *Eastburg*, 447 B.R. at 632 n.38. Therefore, unless modified, the discharge injunction prohibits the parties from continuing to litigate the Cross-Claim in the State Court Foreclosure Action following remand.

      2.      *Modification of the Discharge Injunction*

Before deciding whether the Court should modify the discharge injunction, the Court must decide whether it has the authority to do so. Courts are split on whether a bankruptcy court has authority to modify the discharge injunction. The Ninth Circuit Bankruptcy Appellate Panel ("Ninth Circuit BAP") has held that bankruptcy courts have no discretion to modify the discharge injunction. *In re Munoz*, 287 B.R. 546, 552–53 (9th Cir. BAP 2002).[22] Other courts have come down on the other of side this issue. *E.g. Matter of Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993); *Eastburg*, 447 B.R. at 633.

In reaching its determination, the Ninth Circuit BAP recognized a principle that bankruptcy courts, as courts of equity, have authority to modify a court-imposed injunction unless there is a "'clear and valid legislative command' constraining the bankruptcy court's discretion . . . ." *Munoz*, 287 B.R. at 552. The Ninth Circuit BAP then pointed out that the discharge injunction is a statutory injunction that is neither drafted nor issued by a court but, instead, is a legal consequence of granting a discharge. *Id*. After examining the language of 11 U.S.C. § 524 and comparing it with other provisions in the Bankruptcy Code, including 11 U.S.C. § 362(d), which expressly authorizes to the court to modify the automatic stay, the Ninth Circuit BAP determined that "[n]othing in [the] language [of § 524 or the Bankruptcy Code] hints at the existence of discretion over the terms of the [discharge] injunction." *Id.* The Ninth

---

[22] *See also In re Zagala*, No. 05-18085-B-7, 2007 WL 1772171, at *2 (Bankr. E.D. Cal. June 19, 2007) ("The discharge injunction which protects the debtor is set in 'statutory concrete' and cannot be modified.") (citing *Munoz*, 287 B.R. at 550).

-14-

Circuit BAP then concluded that the Bankruptcy Code's "statutory scheme constitutes a 'clear and valid' legislative command that leaves no discretion in the court to 'modify' the discharge injunction." *Id*. at 553.

Recently, the United States Supreme Court examined the interplay between 11 U.S.C. § 105(a) and 11 U.S.C. § 524 that imposes a discharge injunction upon entry of an order granting a debtor a discharge. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019). At issue in *Taggart* was whether a court may impose civil contempt sanctions to enforce the discharge injunction. The Supreme Court observed that the statutory term "injunction" used in 11 U.S.C. § 524 is transplanted from another legal source that brings with it "old soil." *Id.* at 1801. "[T]he statutes specifying that a discharge order 'operates as an injunction,' § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions." *Id*.

> That 'old soil' includes the 'potent weapon' of civil contempt. Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Id.*

*Id.*

The Seventh Circuit, in holding that bankruptcy courts have authority to modify the discharge injunction, like the Supreme Court in *Taggart*, relied on traditional principles of equity practice. *See Matter of Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993) (under the principle that "a court can modify an injunction that it has entered whenever the principles of equity require it do so" a court may modify the § 524(a) discharge injunction). Other courts similarly have applied

traditional principles of equity practice in holding that bankruptcy courts may modify the discharge injunction.[23]

The Tenth Circuit Bankruptcy Appellate Panel in *Eastburg* explained how modification of the discharge injunction may be necessary or appropriate to carry out other bankruptcy code provisions:

> [T]he purpose of modification of the discharge injunction by the bankruptcy court is the same—to give a creditor permission to continue litigation against a debtor in state court. Once a party has filed for protection from his creditors under the Bankruptcy Code, the bankruptcy court is expected to take charge of logistics and play the role of "traffic cop" with respect to creditors' actions against a debtor. We believe modification of the discharge injunction is one method the bankruptcy court may use to properly exercise this role.

*Eastburg*, 447 B.R. at 633. [24]

This Court agrees with those courts that have held that bankruptcy courts have the authority to modify the discharge injunction. The authority is derived from 11 U.S.C. § 105(a), which provides that a court may issue any order or judgment that is necessary or appropriate to carry out other bankruptcy provisions, and traditional equity principles.

The Court will exercise its discretion to modify the discharge injunction for the limited purpose of allowing the state court to rule on the pending Motion to Reconsider and to let stand, vacate or modify the Summary Judgment in accordance with the ruling without taking evidence. By remanding so the State Court may rule on the pending Motion to Reconsider its own ruling

---

[23] *See In re Moy*, No. 12-B-81963, 2016 WL 7745143, at *1 (Bankr. N.D. Ill. Jan. 13, 2016) (following *Hendrix*); *In re Jenkins*, 330 B.R. 625, 629 (Bankr. E.D. Tenn. 2005) (same); *In re Fucilo*, No. 00-36261(CGM), 2002 WL 1008935, at *9 (Bankr. S.D.N.Y. Jan. 24, 2002) (following *Hendrix*); *In re Schultz*, 251 B.R. 823, 826 (Bankr. E.D. Tex. 2000) (A bankruptcy court has the power to modify the discharge injunction; "[i]t has long been recognized that any court that issues an injunction has a continuing power to supervise and modify its injunctions in accordance with changed conditions.").
[24] *See also In re Robben*, 562 B.R. 469, 475 (Bankr. D. Kan. 2017) (citing *Eastburg* with approval for the proposition that "the discharge injunction may be modified and that modification is one method for the bankruptcy court to exercise its role of 'traffic cop' with respect to creditors' actions against discharged debtors.").

this Court gives due respect to the state court. By so limiting modification of the discharge injunction this Court maintains control over litigation of the state law claim and avoids needless duplicative litigation and the possibility of inconsistent results if further proceedings are necessary to establish the validity or amount of the debt alleged in the Cross-Claim.

If the State Court denies the Motion to Reconsider and lets the Summary Judgment stand, or grants the motion in part and enters an amended final Summary Judgment as a result of that ruling, the final Summary Judgment will establish the validity and amount of the debt alleged in the Cross-Claim. *See Crespin*, 551 B.R. at 897-98 (prior state court judgment can be given claim-preclusive effect to establish the existence and amount of the debt).[25] This Court would then determine in the Non-Dischargeability Action whether the debt meets the non-dischargeability requirements of 11 U.S.C. § 523(a). If, on the other hand, the State Court grants the Motion to Reconsider and vacates the Summary Judgment, or grants the motion in part without entering an amended final Summary Judgment based on the ruling, the discharge injunction will prohibit further litigation of the Cross-Claim in the State Court Foreclosure Action. The parties then will litigate the validity of the debt alleged in the Cross-Claim as part of the Non-Dischargeability Action before this Court. If the Court determines that the debt is valid and is non-dischargeable, this Court will also quantify the damages amount thereby precluding the need for the parties to return to state court. *See Lang v. Lang (In re Lang)*, 293 B.R. 501, 517 (10th Cir. BAP 2003) ("[B]ankruptcy courts have the jurisdiction to award money damages in a § 523(a) proceeding."); *cf. Eastburg*, 447 B.R. at 633 ("Whether or not the validity and extent of

---

[25] S*ee also Quan Li v. Yen Ming Chu (In re Yen Ming Chu)*, No. 18-20703-LSS, 2019 WL 4130869, at *3 (Bankr. D. Md. Aug. 29, 2019) (citing *Crespin*, 551 B.R. at 897); *State of Colo. v. Jensen (In re Jensen)*, 395 B.R. 472, 491 (Bankr. D. Colo. 2008) ("[R]es judicata [claim preclusion] may prevent the bankruptcy court from reexamining matters other than the dischargeability aspect, such as the validity and the amount of the debt.") (citation omitted); *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 28-29 (Bankr. E.D.N.Y. 2011) (the debt in the nondischargeability action was established by claim preclusion).

a debt is better litigated in the bankruptcy court or the state court is left to the bankruptcy court's discretion.").

CONCLUSION

The discharge injunction replaced the automatic stay upon entry of the order granting Mr. Pacheco a discharge. This Court has authority to modify the discharge injunction. By modifying the discharge injunction solely to permit the State Court to rule on the Motion to Reconsider the summary judgment it entered, the Court maintains its control over the bankruptcy discharge and avoids the potential for wasted duplication of litigation efforts, while at the same time giving due respect to the State Court under principles of comity. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 13, 2020

COPY TO:

Camille Cordova
Attorney for Cross-Plaintiff
The Alarid Law Firm, P.C.
300 Central SW, Suite 2200 East
Albuquerque, NM 87102

Edward Alexander Mazel
Attorney for Cross-Plaintiff
Mazel Law, LLC
122 Central Ave. SW, Suite 4
Albuquerque, NM 87102

Michael Edward Lash
Christopher L. Trammell
Attorneys for Cross-Defendant
Christopher L. Trammell, P.A.
3900 Juan Tabo, NE
Albuquerque, NM 87111